# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIPAT DONOVAN, | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) Case No. 05 C 3533 |
| v. | ) |
| | ) Magistrate Judge Nan R. Nolan |
| VICTORIA C. QUADE and | ) |
| QUADE/DONOVAN ENTERTAINMENT, INC., | ) |
| an Illinois corporation, | ) |
| Defendants/Counter-Plaintiffs. | ) |

## MEMORANDUM OPINION AND ORDER

This case involving disputes between two former partners is before the Court on Defendants/Counter-Plaintiffs Victoria C. Quade and Quade/Donovan Entertainment, Inc.'s motion for partial summary judgment (Doc. 128). That motion is granted in parted and denied in part.

## BACKGROUND

As a threshold matter, Defendants' submission in response to Plaintiff/Counter-Defendant Maripat Donovan's (Donovan) Statements of Additional Fact (Doc. 148) fails to comply with Local Rule 56.1(b)(3)(B). Under Local Rule 56.1(a), "[a]ll material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party." In order to controvert the statement of additional facts, the moving party must submit "a concise reply in the form prescribed" in section (b) for a response. Section (b) of Local Rule 56.1 says that a response shall contain "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." None of Defendants' denials includes

any specific references to the record or supporting materials. Because Defendants failed to support their denials of Plaintiff's additional facts with citations to the record, all properly supported facts set forth in Plaintiff's Statements of Additional Fact (Doc. 141) are deemed admitted for purposes of the summary judgment motion. Ammons v. Aramark Uniform Services, Inc., 368 F.3d 809, 817 (7th Cir. 2004) (noting the Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1.").

The following facts are taken from the parties' Local Rule 56.1 Statements and are undisputed unless otherwise noted. Plaintiff Donovan and Defendant Quade identify themselves as authors and producers of plays performed in professional, amateur and other venues throughout the world. On or about July 12, 1993, Quade and Donovan as co-authors registered the play *Late Nite Catechism* (LNC) with the United States Copyright Office (Doc. 141 ¶ 7; Doc. 148 ¶ 1). The primary character in LNC is a Roman Catholic nun known as "Sister" ("Sister") (Doc. 141 ¶ 9). "Sister" is a fictional character based on a number of actual nuns (Doc. 141 ¶ 10). Beginning in 1993, and continuing through the present date, LNC has run continuously in theatrical venues in and around Chicago (Doc. 141 ¶ 8).

In June 2000, Donovan and Quade formed Defendant Quade/Donovan Entertainment, Inc. (QDE) as an Illinois corporation to produce LNC (Doc. 148 ¶ 4). QDE is owned in equal shares by Donovan and Quade (Doc. 141 ¶ 3; Doc. 148 ¶ 4). From 1993 to the formation of QDE in 2000, Donovan and Quade produced together only the play LNC (Doc. 148 ¶ 1). From June 2000 to 2005, QDE produced only LNC, consistent with its purpose (Doc. 148 ¶ 5).

Quade asserts that she and Donovan entered into a written partnership agreement (the "Partnership Agreement") in 1995. The Partnership Agreement Quade offers purports to contain Donovan's signature, but Donovan cannot recall ever signing the document (Doc. 148 ¶ 2). Donovan has admitted that she and Quade were partners (Doc. 129-2 ¶ 17), but Donovan believes that her signature on the Partnership Agreement is a forgery.

The Partnership Agreement was drafted for use in a prior litigation between Quade and Donovan on one side and several others on the other side who claimed rights in LNC and was discarded when the litigation ended (Doc. 148 ¶ 2). Donovan explains that the Partnership Agreement was "contrived as evidence" because she and Quade believed that the existence of an apparently preexisting partnership agreement between them would be helpful to their position that the others were not authors. The case for which the Partnership Agreement was drafted was settled without the document being used and there was never a need for it to be signed (Doc. 148 ¶ 2). Neither Donovan nor Quade performed under the Partnership Agreement, and the document was not intended to control the parties' relationship (Doc. 148 ¶ 3).

The copy of the Partnership Agreement offered by Quade surfaced in late October 2004, when Quade's lawyer sent a copy to Donovan's lawyers (Doc. 148 ¶ 16). On November 4, 2004, Donovan notified Quade that Donovan considered the written Partnership Agreement as invalid and of no force or effect (Doc. 148 ¶ 17). On June 16, 2005, Donovan filed a Memorandum and Declaration in this case in which she stated, "I considered our partnership, if one ever existed, to have been terminated . . . " (Doc. 148 ¶ 18).

Accountant Hall Roseth's accounting firm began performing work for Donovan and Quade in connection with LNC in 1996 and that firm has also handled Quade's personal tax matters (Doc. 148 ¶ 6). Roseth testified that he was never aware of any written partnership agreement between Donovan and Quade, but that a partnership had existed and the parties had filed partnership tax returns prior to the incorporation of QDE in 2000. (Doc. 148 ¶ 7; Doc. 129-4 at p. 10-12)). Roseth dealt mostly with Quade in forming QDE and he, Quade and Donovan did not think a partnership was the best way to operate their business (Doc. 148 ¶ 8). Roseth recommended that QDE be formed "in place and stead" of a partnership relationship, and the corporate form of business was chosen over a partnership so otherwise applicable self-employment taxes could be minimized and salaries could be taken instead of profit from LNC productions (Doc. 148 ¶ 9). The idea was that Donovan and Quade would each receive reasonable compensation short of the total profitability of the company. Id.

Donovan has created plays other than LNC that incorporate a "sister" character without any participation by Quade (Doc. 148 ¶ 19). Donovan created plays entitled *Sister's Christmas Catechism: The Mystery of the Magi's Gold, Late Night Catechism II: Sometimes We Feel Guilty Because We Are Guilty,* and *Late Nite IV: 'Til Death Do Us Part*, which all include a character of a nun dressed in a habit that is identified as "Sister" (Doc. 141 ¶ 17). Donovan did not share control over licensing of any of her new plays with Quade (Doc. 141 ¶ 22). Donovan has also not shared benefits or expenses related to the use and/or licensing of her new plays with Quade (Doc. 141 ¶ 23).

In 2004, Donovan registered *Catechism II Sometimes We Feel Guilty Because We Are Guilty* with the United States Copyright Office. (Doc. 141 ¶ 18). The copyright

registration for *Catechism II Sometimes We Feel Guilty Because We Are Guilty* identifies *Late Nite Catechism* as a derivative work (Doc. 129 Exh. 15). Donovan says she signed the registration but did not fill out the form (Doc. 129 Exh. 10, p. 91).

Quade has created theatrical works derivative of LNC and involving the character "Sister," including the plays known as *Put the Nuns in Charge!* (PNC) and *Sunday School Cinema* (Doc. 141 ¶ 24). Quade has produced these plays only through QDE. (Doc. 141 ¶ 26).

## **DISCUSSION**

Federal Rule of Civil Procedure 56 states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Id. at 256.

**A.  False Designation of Origin and Deceptive Trade Practices
(Counts I and II of Donovan's Complaint)**

Counts I and II of Donovan's Complaint assert that Quade falsely designated the origin of her play PNC in violation of 15 U.S.C. § 1125(a) and engaged in deceptive trade practices in violation of 815 ILCS 510/2. Both counts are predicated on the same factual

allegations. Donovan alleges that handbills and other advertising for PNC used Donovan's "Sister" persona, name, image, likeness and caricatures so as to falsely designate the play as having the approval of, having been written by or otherwise having an association with Donovan. Quade says that the handbills and other advertising material referred to in Counts I and II were all changed in 2005 pursuant to an agreement between the parties, and those currently in use have not been challenged by Donovan.

As to the prior handbills and advertising material, Quade argues that the uncontested facts demonstrate that Donovan cannot prove any of the elements of a false designation of origin claim based on 15 U.S.C. § 1125(a) or under the Illinois Uniform Deceptive Trade Practices Act. McGraw-Edison Co. v. Walt Disney Prods., 787 F.2d 1163, 1173-74 (7th Cir. 1986) (holding state-law deceptive trade practices claim is analyzed under the same standards as federal trademark claim). By failing to address the propriety of these claims her Memorandum in Opposition (Doc. 139), Donovan has conceded that Quade is entitled to summary judgment on Counts I and II of the complaint. Quade has established a lack of genuine issues of material fact as to the likelihood of confusion regarding the origin of her play PNC and her entitlement to judgment as a matter of law on this issue. Summary judgment is therefore granted in Quade's favor on Counts I and II of the complaint.

**B.     Breach of a Partnership Agreement (Count I of Defendants' Amended Counterclaim)**

Quade contends that Donovan breached the parties' partnership agreement by failing to share half of the profits of works derivative of LNC. Under Illinois law, to prevail on her breach of partnership agreement claim, Quade must show (1) the existence of a

contract between Donovan and Quade, (2) Quade performed her obligations under the contract, (3) Donovan breached the contract by failing to account to Quade for revenues due, and (4) Quade sustained damages as a result of Donovan's breach. International Supply Co. v. Campbell, 907 N.E.2d 478, 487 (Ill. App. 2009). "Partnership agreements as to the division of profits may be express or implied from acts, transactions, and the previous conduct of the partners." Seymour v. Williams, 618 N.E.d2d 966, 971 (Ill. App. 1993).

The first question is whether there was any agreement between Donovan and Quade as to the division of any profits from derivative LNC works. If there was an agreement, the profits were to be divided in accordance with the agreement. If no agreement existed, Quade argues that the Illinois Uniform Partnership Act (820 ILCS 206/100) ("IUPA") governs the rights and duties of partners. See 805 ILCS 206/103 (stating "[t]o the extent the partnership agreement does not otherwise provide, this Act governs relations among the partners and between the partners and the partnership.").

In support of her assertion that Donovan breached the terms of a partnership agreement by failing to pay half of all profits generated by derivative works of LNC, Quade points to the written Partnership Agreement which she asserts the parties entered into on or about July 18, 1995. Donovan has admitted that a partnership existed (Doc. 129-2 ¶ 17) but contends that the Partnership Agreement Quade offers in not valid. Donovan says "that their mutual business obligations as to productions of LNC are as shareholders/officers of QDE, not as 'partners,' and that the parties' obligations to each other related to derivative works of LNC is governed by custom and usage in the theatrical industry as joint copyright holders of LNC" (Doc. 139 at 3).

Quade is not entitled to judgment as a matter of law on the issue of whether Donovan breached a partnership agreement because she has failed to come forward with sufficient evidence from which a jury could find for her on an essential element of her claim: an agreement by Donovan and Quade to share half of all profits generated by derivative works of LNC. Quade's only evidence regarding the sharing of profits generated by derivative works is the written Partnership Agreement, but Quade has admitted that neither party performed under the written Partnership Agreement she offers and that the document was not intended to control the parties' relationship (Doc. 148 ¶ 3). Quade has not come forward with any other evidence of an agreement to share profits from derivative LNC works. Although Donovan has admitted that she and Quade were partners, Donovan has not provided any evidence regarding the circumstances surrounding the formation of the partnership or the substance of the partnership. Because the summary judgment record does not show that Donovan and Quade agreed to share profits from works derivative of LNC, the Court cannot conclude that Donovan breached the partnership agreement by failing to pay such revenues to Quade.

Quade argues that in the absence of evidence of an agreement as to the division of profits from derivative LNC works, the provision of the IUPA providing for an equal distribution of profits applies. <u>Seymour</u>, 618 N.E.2d at 971. The IUPA provides in pertinent part that "[e]ach partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits." 820 ILCS 206/401(b). Donovan contends that the IUPA is irrelevant to the summary judgment motion because Quade has cited no evidence that there was an oral partnership agreement between these parties relating to works derivative of LNC, what the

terms of such an agreement might be or how they survived QDE's incorporation in 2000.

Quade has not established that she is entitled to summary judgment on her claim under the IUPA to half the profits generated by works derivative of LNC. The right to an equal distribution of profits under the IUPA extends only to partnership assets. The record does not establish that profits generated from works derivative of LNC created solely by the other co-owner were within the scope of the partnership and thus, a partnership asset subject to the IUPA. Again, the written Partnership Agreement offered by Quade did not control the parties' relationship. No other evidence was offered by Quade to prove that profits from derivative sequels fall within the terms and scope of the partnership agreement between the parties.

In her opening Memorandum, Quade claims that she and Donovan "associated to develop and exploit LNC and any derivative works based thereon," giving the example that they jointly entered into a production agreement with Entertainment Events, Inc. in 1995 to produce their joint work, LNC. The LNC production agreement does not establish that derivative works created solely by the other co-owner fall within the scope of the partnership business. As Donovan points outs, Quade fails to cite any authority for the proposition that where copyright holders license their joint work, they become partners for all purposes relating to the joint work. In the absence of evidence of an agreement to include derivative works created solely by the other co-owner within the scope of the partnership business, the Court cannot find that the IUPA's provision applies and requires an equal division of such profits among the partners. For these reasons, Quade is not entitled to judgment as a matter of law on Count I of her counterclaim.

**C. Deprivation of Copyright Revenues (Count II of Defendants' Amended Counterclaim)**

Defendants argue that they are entitled to summary judgment on Count II of the Amended Counterclaim because the undisputed facts show that Donovan failed to account and pay to Quade any profits she made from the exploitation of derivative works based upon LNC. Donovan contends that Quade is not entitled to summary judgment on Count II of the Amended Counterclaim because a question of fact exists as to the amount each of the parties owe to each other for the production of works that are derivative of LNC. Donovan argues that Quade has not established what formula or basis to apply to determine what each party must pay each other as "underlying rights payments." Quade's Reply asserts that her right to split evenly proceeds from derivative works is based on the written Partnership Agreement and copyright law. See (Doc. 146 at 11) (stating "[t]he Partnership Agreement specifically provides that all proceeds from exploitation of the character 'Sister' are to be split evenly between the parties, and as co-owners of the copyright in LNC, copyright law confirms this obligation."). Quade goes on to say that the amount each of the parties owes each other for the production of works that are derivative of LNC is irrelevant to her summary judgment motion. According to Quade, "[s]ummary judgment is appropriate as to the liability of Donovan to account for profits, if any, from use of her derivative works" but Quade is not seeking summary judgment "as to any computation of amounts that may be owed" (Doc. 146 at 10, 11).

The issue thus appears to be whether Quade is entitled to judgment as a matter of law on her claim for an accounting of derivative works of LNC. Quade claims an accounting by Donovan for exploitation of derivative works "is obligatory because of copyright and

contract law" (Doc. 146 at 10). Because it is undisputed for purposes of summary judgment that neither party performed under the written Partnership Agreement Quade offers and that document was not intended to control the parties' relationship, a duty to account for profits from derivative works does not derive from the Partnership Agreement.

Quade's claim for an accounting is also predicated on her assertion that she is a joint author of LNC under the Copyright Act. Under 17 U.S.C. § 201(a), "[t]he authors of a joint work are co-owners of copyright in the work." See also Erickson v. Trinity Theater, 13 F.3d 1061, 1068 (7th Cir. 1994) (stating "the joint authors hold undivided interests in [the] work, despite any differences in each author's contribution."). Under the Copyright Act, a "joint work" is a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The Seventh Circuit has determined that this language requires (1) intent to create a joint work; and (2) contribution of independently copyrightable material. Erickson, 13 F.3d at 1071.

Donovan does not challenge the second element of independent copyrightability. As to the first element, Donovan denies that she and Quade co-wrote LNC (Doc. 141 ¶ 6). It is undisputed, however, that Donovan and Quade filed a copyright registration for LNC, identifying themselves as co-authors (Doc. 141 at ¶ 7; Doc. 148 at ¶ 1). This is strong evidence of Donovan's intent to create a joint work in LNC. Janky v. Lake County Convention and Visitors Bureau, 576 F.3d 356, 362 (7th Cir. 2009). Moreover, the evidence Donovan cites for her denial is not sufficient to defeat summary judgment on this issue. Donovan's conclusory statement in her declaration that she wrote the play LNC does not create an issue of fact. There are no specific facts supporting this statement. Larsen v. City

-11-

of Beloit, 130 F.3d 1278, 1282 (7th Cir. 1997) (stating "'[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.'"). Donovan also points to her unsworn, conclusory denial in her answer to paragraph 8 of the counterclaim that she and Quade wrote the play. "A party's own unverified answer is insufficient factual support on a motion for summary judgment." Williams v. Cano, 2008 WL 4367417 at *2 (N.D. Ill. March 27, 2008). Finally, Donovan cites pages 46-49 of her deposition. Because pages 46-48 on which Donovan relies are not a part of the record in this case, the Court is unable to rely on this evidence in ruling on summary judgment (Doc. 129, Exh. 10; Doc. 141 Ex. A). The Court has reviewed page 49 of Donovan's deposition and finds that the deposition testimony does not present a genuine issue of material fact as to whether Quade and Donovan co-authored LNC. Donovan testified only as to how the original twenty-five pages of LNC were created, and her testimony does not demonstrate that Quade was not a joint author of LNC.

Because there is no genuine dispute that Quade is a joint author of LNC, she is entitled to summary judgment on her demand for an accounting. Donovan must account for profits earned from her exploitation of derivative works of LNC. Erickson, 13 F.3d at 1068 (stating "[e]ach author as co-owner has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profit."). Quade's share of the profits from production of derivative works remains to be determined. The division of profits will be based on state rather than federal law. Gaiman v. McFarlane, 360 F.3d 644, 652 (7th Cir. 2004).(stating "[w]hen co-ownership is conceded and the only issue therefore is contractual, or in the absence of contract equitable, division of the profits from the copyrighted work, there is no issue of copyright law and the suit for an accounting of profits

therefore arises under state rather than federal law.").

One issue is left. Donovan denies that her plays known as *Sister's Christmas Catechism: The Mystery of the Magi's Gold*; *Late Nite Catechism II: Sometimes We Feel Guilty Because We Are Guilty*; *and Late Night IV: 'Til Death Do Us Part* which involve the character "Sister" are works derivative of LNC. (Doc. 141 ¶ 17). The Copyright Act defines a derivative work as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. The only evidence Donovan offers in support of her denial that her new plays are derivative works is her unsworn answers to ¶¶ 79, 81 of Quade's counterclaim. Doc. 141 ¶ 17. Donovan cannot point to unsworn, conclusory denials found in her answer to the counterclaim to establish a disputed fact at summary judgment. Rather, Donovan is required to come forward with "specific facts showing a genuine issue for trial" on the issue of whether she created derivative works of LNC. Fed. R. Civ. P. 56(e)(2); see also Advisory Committee's Note to 1963 Amendment to Rule 56(e) (stating "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). Donovan has failed to provide any facts that support a finding that the plays known as *Sister's Christmas Catechism: The Mystery of the Magi's Gold*; *Late Nite Catechism II: Sometimes We Feel Guilty Because We Are Guilty*; *and Late Night IV: 'Til Death Do Us Part* are not derivative works of LNC.

## CONCLUSION

For these reasons, Defendants/Counter-Plaintiffs Victoria C. Quade and Quade/Donovan Entertainment, Inc.'s motion for partial summary judgment is granted in part and denied in part. Summary judgment is granted in Quade's favor with respect to Counts I and II of the complaint. Summary judgment is denied as to Count I of the counterclaim. Summary judgment is granted as to Count II to the extent it seeks an accounting of profits derived from derivative works of LNC and denied to the extent it seeks judgment as a matter of law on Quade's claim for half of all profits related to derivative works.

**E N T E R:**

*[signature: Nan R. Nolan]*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: October 15, 2009**